IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
            )
v.                        ) CRIM. ACTION 10-0044-WS
            )
VELETA WILLIAMS,         )
            )
    Defendant.         )

## ORDER

This matter is before the Court on the defendant's "petition to vacate restitution order & petition to expunge record," (Doc. 130), which the Court construes as motions for such relief.[1]  The government has filed a response and the defendant a reply, (Docs. 136, 138), and the motions are ripe for resolution.  After careful consideration, the Court concludes that both motions are due to be denied.

## BACKGROUND

Count One of the superseding indictment charged the defendant with conspiracy to defraud an agency of the United States, specifically, the Internal Revenue Service ("IRS"), between October 2003 and December 2006.  (Doc. 54 at

---

[1] The defendant focuses a great deal of attention on her counsel's alleged ineffective assistance.  She repeatedly makes clear, however, that she does not seek relief from her conviction or from the imprisonment and supervised release portions of her sentence.  First, she styles her motion as one to vacate restitution and to expunge the record only.  Second, her conclusion repeats that she is seeking only that the Court "vacate the restitution and grant my request for expungement." (Doc. 130 at 8).  Third, the defendant states that, "[f]or clarity, there is no motion before the court requesting ineffective assistance of counsel. [sic]  I am asking the court to couple the facts that could've been used to a support [sic] a claim of ineffective assistance of counsel with the exceptional equitable circumstances and grant the expungement and vacate the restitution as a matter of fairness and in the interest of justice." (*Id*. at 7).  Rather than raising ineffective assistance of counsel as a stand-alone claim, the defendant asserts ineffective assistance as an exceptional circumstance permitting her to challenge the restitution calculation and to obtain expungement.  (*Id*. at 5, 7).

1-5).  Count Five charged the defendant with conspiracy to commit health care fraud between May and December 2006.  (*Id*. at 7-11).  In December 2010, the defendant pleaded guilty to Counts One and Five.  (Doc. 94).  In the factual resumé accompanying her plea agreement, the defendant "admit[ted] in open court and under oath that the following statement is true and correct."  (Doc. 92 at 11).  Among these admitted facts are those listed in the following paragraphs.

The defendant worked as accountant and business manager for Williams Group Home, Inc. ("WGH"), which was operated and directed by her brother and co-defendant and which provided residential group home care and services to intellectually disabled individuals.  WGH employed over thirty individuals.  (Doc. 92 at 11).

The defendants conspired to impede and impair the IRS in its ascertainment, computation, assessment and collection of these employees' income, Social Security, and Medicare taxes.  They implemented their conspiracy by various means, including:  not providing W-2 forms to WGH employees; not withholding employment taxes (Social Security and Medicare) and not paying such sums to the IRS; not filing W-2's as legally required; rarely providing employees with Form 1099's; and failing to submit Forms 1099, 1096 and 941 to the IRS.  (Doc. 92 at 11-12).

The defendants implemented their conspiracy to commit health care fraud by various means, including by submitting to the Alabama Medicaid Agency ("AMA") and/or the Alabama Medicaid Fraud Control Unit ("AMFCU") (collectively, "Medicaid") for fiscal year 2004:  Form 1099's that falsely inflated the employees' compensation; payroll registers that falsely inflated the employees' compensation; a cost report that falsely inflated the employees' compensation; and employee contracts that falsely inflated the employees' hourly rate.  (Doc. 92 at 13-14).

"The defendant VELETA WILLIAMS hereby agrees that the amount of loss attributable to his [sic] criminal conduct is $1,000,315."  (Doc. 92 at 14).

2

In her plea agreement, the defendant "hereby stipulate[d] that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt."  (Doc. 92 at 8).

In April 2011, the Court sentenced the defendant to a prison term of six months as to each count, to run concurrently.  (Doc. 114 at 2).  The Court ordered restitution of $329,315 payable to the IRS and $315,575 payable to AMFCU.  (*Id*. at 5).  The defendant, whose plea agreement precluded a direct appeal unless her sentence exceeded the statutory maximum or represented an upward departure or variance from the guideline range, (Doc. 92 at 6-7), did not appeal.  The plea agreement also precluded any collateral attack, including a motion to vacate under 28 U.S.C. § 2255, (*id*.), and the defendant filed no such motion.

In December 2017, almost seven years after she was sentenced, the defendant filed a deemed motion to reduce her restitution obligation.  (Doc. 121).  The Court denied the motion as untimely.  (Doc. 122).  "[W]e have held that a petitioner who failed to contest a restitution order either at sentencing or on direct appeal cannot for the first time challenge the district court's initial restitution calculation in a collateral proceeding, absent exceptional circumstances." *Dohrmann v. United States*, 442 F.3d 1279, 1281 (11th Cir. 2006).  Absent exceptional circumstances, "a criminal defendant who fails to object to the calculation of the restitution at both of these stages of the judicial process [sentencing and direct appeal] loses the right to advance a challenge to this calculation."  *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003).  A defendant's failure to raise the issue at the required times "waive[s]" her right to object to the restitution calculation.  *Id*. at 1214.[2]

---

[2] This is so whether the defendant ultimately raises the issue in a collateral proceeding, as in *Dohrmann*, or as a motion in her criminal case.  *United States v. Keys*, 138 Fed. Appx. 251, 252 (11th Cir. 2005).

The defendant did not object to the calculation of restitution at or before sentencing.  On the contrary, and as noted previously, in the factual resumé accompanying her plea agreement, the defendant "hereby agrees that the amount of loss attributable to [her] criminal conduct is $1,000,315." (Doc. 92 at 14).  The presentence report ("PSR"), prepared by Probation in advance of sentencing, accurately stated that the defendant agreed the amount of loss attributable to her criminal conduct was $1,000,315.  (Doc. 100 at 6).  The PSR continued that the government had conceded that the Medicaid portion of this loss should be reduced by the amount of compensation actually paid to employees of WGH, reducing the restitution owed that victim from $671,000 to $315,575.  (Doc. 100 at 6).  At sentencing, the defendant and her counsel confirmed that they had reviewed the PSR and understood its contents, and counsel confirmed there were no objections to the PSR.  (Doc. 116 at 4-5).

Because she did not challenge the restitution calculation at sentencing, the plaintiff was required, in order to pursue her deemed motion to reduce her restitution obligation, to demonstrate the existence of exceptional circumstances.  Because the defendant did not identify any such circumstances, much less establish their existence, the Court denied her motion.  (Doc. 122).

In August 2022, over eleven years after sentencing and almost five years after the Court's ruling, the defendant filed the instant motions.[3]

---

[3] It may be doubted whether a motion to vacate restitution, even one supported by exceptional circumstances, may properly be brought over a decade after the underlying sentence became final.  It may further be doubted whether a second motion to vacate restitution may properly be brought at all, much less some five years after a prior motion was resolved on the merits.  Similarly, it may be doubted whether a motion to expunge may properly be brought at this late date.  The government, however, raises no appropriate untimeliness argument.  The government argues that any ineffective assistance claim is untimely for failure to assert it on direct appeal, (Doc. 136 at 4-5), but, as discussed in note 1, *supra*, the defendant raises no such claim.  The defendant correctly notes that a post-direct appeal motion to vacate restitution that is unsupported by exceptional circumstances is untimely, (*id*. at 8-9), but, as discussed in Part A, the defendant asserts such exceptional circumstances, *viz*., ineffective assistance of counsel.

### A. Motion to Vacate Restitution.

The defendant challenges "[w]hether the amount of restitution ordered was proper." (Doc. 130 at 1). As noted, because she failed to assert such a challenge at sentencing, her waiver of this challenge stands unless she can show exceptional circumstances for her failure. "Such [exceptional] circumstances would be analogous to a showing of 'cause and actual prejudice' such as would render reviewable a constitutional claim asserted for the first time in a habeas corpus petition." *Cani*, 331 F.3d at 1214 n.2. "[I]neffective assistance of counsel … would constitute exceptional circumstances if proved," for purposes of the *Cani* rule. *Arnaiz v. Warden*, 594 F.3d 1326, 1328 n.2 (11th Cir. 2010).

The defendant asserts that the restitution aspect of her sentence "was not challenged at the time of sentencing … [a]s a direct result of the ineffective assistance of counsel." (Doc. 130 at 5). If the defendant can demonstrate that she received ineffective assistance regarding the restitution calculation, she may now challenge that calculation; if she cannot, her waiver of any such challenge stands.

The defendant acknowledges that the standard for demonstrating ineffective assistance of counsel is the two-prong test laid down in *Strickland v. Washington*, 466 U.S. 668 (1984). "The performance prong of *Strickland* requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (internal quotes

---

As noted, the defendant's plea agreement included an appeal waiver, by which the defendant agreed not to challenge her conviction or sentence (except in two narrow situations not implicated here) either on direct appeal or by collateral attack. (Doc. 92 at 6-7). The government does not argue that the defendant's motions are barred by this waiver.

Because the government has not effectively challenged the defendant's motions as untimely or as barred by her appeal waiver, the Court proceeds to their merits.

omitted).  "[C]ounsel's error must be so egregious that no reasonably competent attorney would have acted similarly." *Harvey v. Warden*, 629 F.3d 1228, 1239 (11th Cir. 2011).  "To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (internal quotes omitted).

The defendant identifies several ways in which she believes counsel was ineffective with respect to restitution.  First, she argues that 26 U.S.C. § 6201 requires a "restitution based assessment" prior to sentencing.  (Doc. 130 at 3-4, 6).  In fact, Section 6201(a)(4)(B) does not address the judicial determination of restitution at all but rather the IRS's post-sentencing collection of court-ordered restitution.  By its explicit terms, this provision delays any assessment until after all criminal appeals are exhausted and the right to appeal has expired.  Counsel's performance could not have been deficient in failing to demand before sentencing an assessment that cannot lawfully be made until after sentencing, and the defendant was not prejudiced by his failure, since such a demand could not have altered the restitution calculation.[4]

Elsewhere in her motion, the defendant suggests that other procedural requirements for the calculation of restitution were not followed.  By statute, the PSR "shall include, to the extent practicable, a complete accounting of the losses

---

[4] The defendant appears to believe that the assessment contemplated by Section 6201(a)(4) is a detailed justification proving the accuracy of the amount owed. (Doc. 138 at 3-4).  It is not.  "An assessment amounts to an IRS determination that a taxpayer owes the federal government a certain amount of unpaid taxes …." *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) (internal quotes omitted).  An assessment is thus a declaration of the amount owed, not a proof of facts underlying that declaration.  In the case of court-ordered restitution, the IRS's assessment follows, and is based simply on, the court's imposition of a restitution obligation.  The defendant's strident insistence to the contrary notwithstanding, (Doc. 130 at 4; Doc. 138 at 3-5, 6), there is patently nothing sinister or remotely improper about the IRS submitting a proof of claim in her bankruptcy proceedings that lacks specific information regarding how the amount of its claim (primarily, the restitution amount and interest thereon) was calculated.

6

to each victim."  18 U.S.C. § 3664(a).  The defendant says the PSR "was never discussed or shared with" her, so she does not know if it contained a complete accounting.  (Doc. 130 at 2).  As noted, however, the defendant at sentencing explicitly confirmed that counsel *had* discussed the PSR with her and that she understood what was contained therein.  (Doc. 116 at 4).  In any event, the PSR expressly identified the two victims and the amount of loss as to each.  (Doc. 100 at 6).  This constitutes the "complete accounting" contemplated by Section 3664(a).  *Keys*, 154 Fed. Appx at 139, 140.  Counsel's performance could not have been deficient in failing to demand a complete accounting when a complete accounting had in fact been made, and the defendant was not prejudiced by his failure, since such a demand could not have altered the restitution calculation.

The defendant next argues that the Court cannot accept uncritically the amount of restitution identified in the PSR, that the government must prove the amount of restitution by a preponderance of the evidence, and that there was no hearing, discussion, or documentation at sentencing to establish the amount of restitution.  (Doc. 130 at 2, 3, 6).  What the defendant overlooks is that she, in her factual resumé, affirmatively agreed that the amount of loss from her criminal conduct was $1,000,315.  (Doc. 92 at 14).  Her factual resumé also identified the victims of her criminal conduct as the IRS and AMA/AMFCU.  (*Id*. at 11-14).  She also overlooks that she denied having any objection to the PSR's identification of the victims or the amount of restitution (which was considerably less than she had agreed to in her factual resumé).  The government bears the burden of proving the proper amount of restitution only if there is a "dispute" as to that amount, 18 U.S.C. § 3664(e), and here there was none.  No hearing, discussion, or documentation was required at sentencing to establish matters to which the defendant had already agreed.   Counsel's performance could not have been deficient in failing to demand that the government prove at sentencing, via hearing, discussion and/or documentation, an amount of restitution to which the defendant had already agreed, and the defendant was not prejudiced by his failure,

7

since any such demand would have been properly rejected in light of the defendant's agreement as to amount of loss.[5]

The defendant understands that she is accountable for all the Social Security, Medicare, and income taxes that WGH's employees did not pay for the tax years 2004-2006,[6] but she argues that, by the time she was sentenced in April 2011, they must have paid some of these taxes, thereby reducing the IRS's loss. (Doc. 130 at 4, 6).[7]  That is not an unreasonable assumption, but the defendant provides no basis for suspecting that the $329,315 restitution figure did not take any such payments into account.  Absent such evidence, counsel's performance could not have been deficient in failing to demand that the employees' pre-sentencing tax payments be offset against the IRS's loss, and the defendant could not have been prejudiced by his failure.[8]

The defendant insists that "Medicaid wasn't due any money."  She bases this conclusion on three points:  (1) WGH billed, and was paid by, Alabama

---

[5] The defendant does not assert that she agreed to the amount of loss from her criminal conduct, and hence to the amount of restitution, due to ineffective assistance of counsel.

[6] Actually, the inclusive tax years are 2003-2006, since Count One, to which the defendant pleaded guilty, alleges that the conspiracy began in October 2003.  (Doc. 54 at 2).  The defendant's assertion that "2003 was not part of the case," (Doc. 130 at 4), is thus incorrect.

[7] *See generally* 26 U.S.C. § 3402(d) (income taxes wrongly not withheld by the employer but paid by the employee "shall not be collected from the employer").

[8] The defendant has complaints about how long it took the IRS to make a Section 6201(a)(4) assessment (apparently, over four years after sentencing) as well as the precision of the assessment (apparently, spreading the restitution amount equally over sixteen quarters), and she is skeptical whether she is being given proper credit for restitution payments by her co-defendant and for tax payments by WGH employees for the relevant period.  (Doc. 130 at 4-5; Doc. 138 at 4-5). The IRS's post-judgment methodology is not before the Court.  The Court does expect, however, that the government is, and will remain, actively involved in assuring that the IRS gives the defendant whatever credit against her restitution obligation the law requires for tax payments by WGH employees and restitution payments by her co-defendant.

Mental Health ("DMH"), with "no direct bill to Medicaid"; (2) Medicaid's general counsel confirmed in a letter that nothing was owed to Medicaid; and (3) Medicaid submitted no proof of claim in the defendant's bankruptcy proceedings. (Doc. 130 at 4, 6).

The letter to which the defendant refers, (Doc. 121 at 7), was penned in November 2006, while the fraud to which the defendant pleaded guilty was still ongoing. Medicaid's general counsel indicates no awareness of this fraud, only of problems in obtaining required documentation from WGH and of the anticipated non-renewal of WGH's contract over these and other issues. The letter confirms that Medicaid "reimburse[s] DMH for any claims on behalf of Williams." The letter states generally that "DMH is our provider under this program, so any recoupment will come from them, and they will have to recoup from Williams." This language indicates that Medicaid could require DMH to make Medicaid whole for the defendants' fraud, but it does not establish that DMH did so, then or at any time before the defendant's April 2011 sentencing. What the letter does establish is that, absent recoupment from DMH, Medicaid was in fact the victim for purposes of restitution. The defendant's bankruptcy proceedings occurred in 2017 and 2018; assuming for present purposes the accuracy of the representation that Medicaid did not file a proof of claim in those proceedings, and assuming for present purposes that it did not do so because DMH had reimbursed it, there is no evidence that DMH did so before the defendant's sentencing rather than afterwards.

Even had the defendant presented evidence reflecting that, as of April 2011, Medicaid had been made whole by DMH for the defendant's fraud, that would mean only that the identity of the victim was misstated in the judgment, naming AMFCU rather than DMH; it would not affect the calculation of the restitution amount in any way.[9]

---

[9] If the government (with the defendant's acquiescence) did mistakenly identify Medicaid rather than DMH as the victim, this appears to be correctable on proper motion.

Because the defendant has identified nothing of which counsel should have been aware in or before April 2011 that would have alerted him that Medicaid was not the correct victim,[10] counsel's performance could not have been deficient in failing to recognize an issue in this regard, and the defendant could not have been prejudiced by his failure, since it could not impact the amount of restitution but only the payee.

In her reply brief, the defendant suggests her counsel was ineffective because he failed to appeal the restitution portion of her sentence. (Doc. 138 at 2). As noted, the defendant agreed to, and was subject to, an appeal waiver. That provision permitted the defendant to appeal only if her sentence exceeded the statutory maximum or constituted an upward departure or variance from the guideline range. (Doc. 92 at 6-7). Because the defendant's sentence fell far below these benchmarks, she could not appeal. Counsel's performance could not have been deficient in failing to file an appeal the defendant was not permitted to pursue, and the defendant was not prejudiced by his failure to file an appeal that would swiftly have been dismissed as improper.[11]

Because the defendant has failed to demonstrate ineffective assistance of counsel with respect to the calculation of restitution, the waiver of this claim that occurred when she failed to object to the amount of restitution at sentencing or on direct appeal remains intact. The same discussion demonstrating her counsel was not ineffective also reflects that the defendant cannot show the amount of

---

*See United States v. Wallace*, 476 Fed. Appx. 230 (11th Cir. 2012). The Court anticipates that the government will investigate the identity of the victim as of April 2011 and take any appropriate steps in light of its findings.

[10] General counsel's letter predated sentencing by several years, but there is no indication that defense counsel knew or should have known of its existence.

[11] The defendant does not assert that her counsel was ineffective with respect to the inclusion of the appeal waiver in her plea agreement.

restitution was incorrectly or improperly determined.  For both reasons, the defendant's motion to vacate the restitution order is due to be denied.

### B.  Motion to Expunge the Record.

As the defendant recognizes, (Doc. 130 at 7), "the district court's ancillary jurisdiction does not stretch so far as to permit the assertion of jurisdiction over a petition to expunge the judicial record in a criminal case on purely equitable grounds." *United States v. Wahi*, 850 F.3d 296, 302 (7th Cir. 2017); *accord United States v. Adalikwu*, 757 Fed. Appx. 909, 911-12 (11th Cir. 2018).  The defendant asserts that her conviction has adversely affected her ability to secure and retain employment, as well as impacting her housing and other court proceedings.  (Doc. 130 at 7).  This sort of post-conviction consequence raises only equitable concerns that do not support jurisdiction to entertain a motion to expunge.  *Adalikwu*, 757 Fed. Appx. at 912 (request for expungement was equitable when "[e]verything [the defendant] complains of, including the damage to his reputation and the increased difficulty of finding work, arose <u>after</u> his arrest and conviction and are entirely external to the criminal case itself.") (emphasis in original).

To avoid the "purely equitable" limitation on jurisdiction, the defendant asks the Court to consider expungement based on a combination of her equitable circumstances and her counsel's ineffective assistance.  (Doc. 130 at 7).  In addition to the instances of alleged ineffective assistance that she presented (and the Court has refuted in Part A) with respect to restitution, the defendant identifies two more that address guilt/innocence:  (1) counsel's failure to investigate the applicability of Section 530 of the Internal Revenue Act of 1978, which provides a "safe harbor" for the misclassification of employees as non-employees in certain situations; and (2) counsel's failure to pursue an administrative hearing with Medicaid.  (*Id*. at 5-6).

It may be doubted whether a federal defendant may properly seek expungement of the records of a conviction based on alleged constitutional

11

violations (including ineffective assistance of counsel) without first obtaining vacation of the conviction by other means. *See United States v. Crowell*, 374 F.3d 790, 796-97 (9th Cir. 2004) (a court lacks jurisdiction to consider a motion for expungement unless the defendant has previously, via a recognized procedural mechanism, obtained a judgment that her conviction must be set aside as unlawful). Because the government raises no such argument, the Court need not resolve the question.

"[W]here motions for expungement challenge an unconstitutional conviction … or are otherwise based upon a constitutional claim, federal courts may have jurisdiction to consider the motion." *United States v. Field*, 756 F.3d 911, 915 (6th Cir. 2014) (citing cases). The government acknowledges this principle but says this case does not implicate it because the defendant "does not question the validity of the underlying criminal proceeding." (Doc. 136 at 6). The government assumes that the grounds for expungement extend to "challeng[ing] the constitutionality of the law under which [the defendant] was convicted," (*id.*), but not to ineffective assistance of counsel. The government does not explain why ineffective assistance of counsel, which implicates the Sixth Amendment, would not constitute a "challenge [to] an unconstitutional conviction" sufficient to support jurisdiction over a motion to expunge the record. The Court therefore assumes for present purposes that it does.

The government next argues that counsel's alleged ineffective assistance with regard to the calculation of restitution could not support expungement of the records of the defendant's conviction, because any such ineffective assistance would not undermine the integrity of her conviction but only of her restitution obligation. (Doc. 136 at 5). The Court agrees with this assessment. In any event, and as addressed in Part A, the defendant has failed to demonstrate ineffective assistance of her counsel with respect to restitution. That leaves for consideration the two asserted instances of ineffective assistance regarding the guilt/innocence phase.

12

Section 530(a)(1) provides in pertinent part as follows:

> If … for purposes of employment taxes, the taxpayer did not treat
> an individual as an employee for any period, and … all Federal tax
> returns (including information returns) required to be filed by the
> taxpayer with respect to such individual for such period are filed
> on a basis consistent with the taxpayer's treatment of such individual
> as not being an employee, then for purposes of applying such taxes
> for such period with respect to the taxpayer, the individual shall be
> deemed not to be an employee unless the taxpayer had no reasonable
> basis for not treating such individual as an employee.

18 U.S.C. § 3401 note, Pub. L. No. 95-600, 92 Stat. 2763, 2885-86.  Section

530(a)(2) provides that a taxpayer has a reasonable basis for not treating an

individual as an employee if he or she reasonably relies on either:  (1) judicial

precedent, published rulings, technical advice specific to the taxpayer, or a letter

ruling directed to the taxpayer; (2) a past IRS audit of the taxpayer that did not

result in an assessment due to the taxpayer's treatment of similarly situated

individuals; or (3) a longstanding recognized practice of a significant segment of

the relevant industry.  *Id*.

The defendant argues that the defendants' misclassification of WGH's

employees as independent contractors had a reasonable basis under all three

options.  For the first prong, the defendant notes that the Alabama Department of

Revenue ("ADOR") was aware that WGH was treating its workers as independent

contractors "and found no issues with the classification."  (Doc. 130 at 6).  For the

second prong, the defendant states that DMH and Medicaid conducted audits,

which included review of staff contracts evincing their treatment as independent

contractors.  (*Id*.).  For the third prong, the defendant says that an unknown

number of unidentified group home providers told her "that this was industry

practice."  (*Id*.).

Assuming without deciding that all of this material is correct (the defendant

offers only her *ipse dixit*), assuming without deciding that the defendant advised

her counsel of these facts (the defendant asserts that she did so only with respect to

"industry practice"), and assuming without deciding that this civil provision has any relevance in a criminal context, counsel could not have performed deficiently by failing to pursue a Section 530 argument, and the defendant could not have been prejudiced by his failure. The defendant's scenario fails to satisfy the first prong, because passivity by ADOR could not constitute a judicial precedent, a published ruling, or advice to (or a letter ruling to) the taxpayer, all of which denote affirmative confirmation of the propriety of the taxpayer's classification. The defendant's situation fails to satisfy the second prong, because Section 530 requires an audit specifically by the IRS, and there is none; nor are state non-taxing agencies empowered to bless the defendants' conduct from a federal tax perspective. Even if the defendant could have satisfied one or more of the "reasonable basis" tests for treating WGH's employees as non-employees, she could not have satisfied other requirements for invoking Section 530's safe harbor. Most obviously, the defendants did not file "all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual": as the defendant expressly admitted in her factual resumé, the defendants failed to file any Form 1099's for WGH's "independent contractors" and failed to file any Form 1096's. (Doc. 92 at 12). Because the defendant patently could not satisfy Section 530, counsel could not have performed deficiently by failing to raise this losing argument, and the defendant could not have been prejudiced by his failure to do so.

According to the defendant, Medicaid scheduled an administrative hearing regarding WGH's 2004 cost report but postponed it shortly before the defendants were indicted. The defendant asked counsel to have Medicaid reschedule the hearing. The defendant states that facts would have been established at such a hearing that could have supported a dismissal of Count Five. (Doc. 130 at 6).

The defendant does not identify the facts a hearing would have established, or through what evidence these facts would have been established. Nor has she shown that any facts favorable to her would have been "established" (as opposed

14

to merely being asserted by her at the hearing), much less sufficient facts to support an acquittal. Absent such a showing, counsel could not have performed deficiently by failing to pursue an administrative hearing, and the defendant could not have been prejudiced by his failure to do so.

"[E]ven where a conviction has been held unlawful and vacated, expungement remains a narrow, extraordinary exception, one appropriately used only in extreme circumstances." *Crowell*, 374 F.3d at 796 (internal quotes omitted). Thus, even had the defendant demonstrated that counsel was ineffective, "she might be eligible for, but would not be entitled to, the extraordinary remedy of expungement." *Id*. It is unnecessary to limn the boundary between circumstances sufficiently extreme to support expungement and circumstances insufficiently extreme, because it is plain that this case falls within the latter category. Count Seven of the superseding indictment was a claim of aggravated identity theft, based on the defendant's submission to Medicaid of false Form 1099's using the names and social security numbers of WGH workers, which offense carried a statutory minimum sentence of two years consecutive. (Doc. 54 at 12; Doc. 54-1).[12] The defendant acknowledges that she pleaded guilty to Counts One and Five, not because of any ineffective assistance of counsel, but in order to remove the risk of a mandatory two-year prison term under Count Seven. (Doc. 121 at 1). The defendant's strategic decision to accept a plea as to certain counts so as to escape harsh punishment under another count was presumably reasonable, but it does not amount to extreme circumstances sufficient to warrant the extraordinary remedy of expungement, either on its own or in combination with the conviction's adverse impacts on the defendant's employability and other aspects of daily living.

---

[12] The defendant does not deny that she engaged in this activity and, in her factual resumé, she affirmatively admitted that she knowingly and willingly submitted false 1099's. (Doc. 92 at 12-14).

The defendant has not demonstrated a constitutional violation.  Nor has she shown the existence of extreme circumstances justifying the extraordinary remedy of expungement.  For both reasons, the defendant's motion to expunge the record is due to be denied.

## CONCLUSION

For the reasons set forth above, the defendant's motion to vacate restitution order, and her motion to expunge the record, are **denied**.

DONE and ORDERED this 4th day of October, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE